United States District Court
Southern District of Texas
**ENTERED**
April 03, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AARON KYLE GLOWSKI, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. H-18-1094 |
| | § | |
| JAMES COLEMAN, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state inmate proceeding *pro se* and *in forma pauperis*, filed a second amended complaint under 42 U.S.C. § 1983 (Docket Entry No. 69) against Texas Department of Criminal Justice ("TDCJ") employees Christine White, Charles Landis, Jan Gustafson, John Kolek, and Jason Mayhew, and University of Texas Medical Branch ("UTMB") employee James Coleman, M.D., and independent contractor nurse practitioner Vivian Elege. Plaintiff also filed a more definite statement of facts as to his claims against Elege (Docket Entry No. 121), who was not served with process in this case.

The defendants, save Elege, filed a motion for summary judgment (Docket Entry No. 99), to which plaintiff filed a response (Docket Entry No. 109).

Having reviewed the motion for summary judgment, the response, the summary judgment exhibits, the more definite statement, the record, and the applicable law, the Court **DISMISSES** the claims against Vivian Elege, **GRANTS** the motion for summary judgment, and **DISMISSES** this lawsuit for the reasons shown below.

## I.  BACKGROUND AND CLAIMS

On January 13, 2017, plaintiff was assigned to work with the Ellis Unit field squad under the direction of squad supervisor defendant White and TDCJ employees Gustafson, Kolek, and Mayhew.   Plaintiff asserts that it had rained the day before, leaving the surrounding terrain saturated with standing water.  During their transport to the work site in a prison tractor trailer, the vehicle jack-knifed and began sliding down a hill into another vehicle.  Plaintiff claims that defendant White yelled for the inmates to jump from the vehicle.  Plaintiff jumped and landed feet first in mud, injuring his back and knee.  When he reported his injuries to White, she told him to walk down to the gym for medical evaluation, even though other injured prisoners were being carried on stretchers.  Plaintiff complains that defendant physician Coleman, who examined the injured prisoners, failed to thoroughly examine him and instead gave him Tylenol and a three day cell pass to rest.  According to plaintiff, Coleman refused to examine him over the following days and weeks, or performed only cursory examinations, and failed to provide him proper treatment.

Plaintiff additionally claims that on three occasions between January 17, 2017, and February 14, 2017, White and Kolek threatened him with disciplinary charges if he refused to sign monthly safety training sheets.  Plaintiff states that he refused to sign one of the sheets, as it was undated and told prisoners not to jump from moving vehicles.  He further complains that, on February 10, 2017, Mayhew and White charged him with a disciplinary infraction for failing to work after he told them his injuries from the incident left him unable

to work.  On that same day, plaintiff told White that he needed to go to the infirmary, but White allegedly refused to take him as he did not have an appointment and she had no authority to determine whether he needed to be seen.  An investigation into the charges determined that plaintiff had refused to go to work or to medical, and he was found guilty on February 24, 2017, of refusing to turn out for work.

Plaintiff contends that the defendants violated his Eighth Amendment rights on January 13, 2017, by subjecting him to hazardous work conditions, instructing him to jump from the vehicle, and subsequently failing to provide him adequate medical care to treat his resulting injuries.  He further claims that the defendants retaliated against him after he refused to sign the incorrect, undated safety training sheet related to the incident.

Plaintiff seeks a declaratory judgment and monetary damages against the defendants in their individual and official capacities.  He further seeks injunctive relief ordering proper training for the defendants and personal protective equipment for inmates, for a "thorough physical examination," and to vacate the disciplinary conviction for refusing to work.

## II.  LEGAL STANDARDS

### A.    28 U.S.C. §§ 1915(e) and 1915A

Because plaintiff is a prisoner proceeding *in forma pauperis*, the Court is required to screen the case and dismiss the complaint, in whole or in part, at any time if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. §

1915A(b); 28 U.S.C. § 1915(e)(2)(B).  A district court may dismiss a claim as frivolous if it lacks any arguable basis in law or fact.  *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory.  *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013).  It lacks an arguable basis in fact "if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Id.* (cleaned up).

Because defendant Vivian Elege was not served with process and is not before the Court, the Court will screen plaintiff's claims against her pursuant to sections 1915(e) and 1915A.

### B.    FRCP 12(b)(6)

The determination of whether a complaint fails to state a claim on which relief may be granted under sections 1915(e) and 1915A is governed by the same standards that govern the determination under Federal Rule of Civil Procedure ("FRCP") 12(b)(6).  *Legate v. Livingston*, 822 F.3d 207, 209–10 (5th Cir. 2016).  "Under that standard, a complaint will survive dismissal for failure to state a claim if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 210 (internal quotes omitted).  Thus, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  All well-pleaded facts are viewed in the light most favorable to the plaintiff, but plaintiff must

allege facts that support the elements of the cause of action in order to present a valid claim. *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010).

C.   FRCP 56

Summary judgment under FRCP 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). If the movant satisfies its initial responsibility of showing the absence of a genuine issue of material fact, the burden shifts to the nonmovant to identify specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 106, 323 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The summary judgment process does not involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v. Harris County*, 956 F.3d 311, 316 (5th Cir. 2020). Disputed factual issues must be resolved in favor of the nonmoving party. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

D.    *Pro se* Pleadings

In reviewing the pleadings, the Court is mindful of the fact that plaintiff is proceeding *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Even under this lenient standard, however, a *pro se* plaintiff must allege more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Iqbal*, 556 U.S. at 678; *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

## III.  ANALYSIS

A.    Official Capacity Claims

Plaintiff's claims for monetary damages against the defendants in their official capacities are barred by sovereign immunity under the Eleventh Amendment. A claim against a state employee in his or her official capacity is a claim against the state. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000); *Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money

damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting section 1983. *NiGen*, 804 F.3d at 394.

Plaintiff's claims for monetary damages against the defendants in their official capacities are **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction as barred by sovereign immunity. *See Otis v. TDCJ*, 812 F. App'x 274, 274 (5th Cir. July 17, 2020).

B.   <u>Deliberate Indifference to Safety</u>

Plaintiff claims that defendants Gustafson, Kolek, and White were deliberately indifferent to his safety in failing to protect him from harm on January 13, 2017. According to plaintiff, the defendants' deliberate indifference caused the incident and his resulting physical injuries.

Although plaintiff and the defendants disagree as to the extent and underlying cause of plaintiff's current medical complaints, there is no dispute that the incident occurred or that plaintiff sustained more than a *de minimis* physical injury. The parties' disagreement as to the degree and nature of plaintiff's current medical complaints goes to the issue of damages, not liability. Consequently, plaintiff's disputes with the medical records and his medical care providers' opinions and plans as to further evaluations and treatment do not raise a genuine issue of material fact for purposes of the pending motion for summary judgment.

7

To establish deliberate indifference based on a prison official's failure to protect, a prisoner must show that (1) he was incarcerated under conditions that objectively posed a substantial risk of serious harm, and (2) that the defendant was deliberately indifferent to his need for protection. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The United States Court of Appeals for the Fifth Circuit has stated that deliberate indifference is "an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A prison official is deliberately indifferent only if he knows of an excessive risk to inmate health or safety and disregards that risk. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (quoting *Farmer*, 511 U.S. at 837). "The Court made clear that a prison official knows of an excessive risk only if (1) he is aware of facts from which he could infer that a substantial risk of serious harm exists, and (2) he in fact draws the inference." *Id.* (cleaned up). That is, a claim for deliberate indifference will only succeed if the facts show that the prison official was subjectively aware of a substantial risk of serious harm to the plaintiff. *Adames*, 331 F.3d at 512.

Deliberate indifference cannot be inferred from a negligent or even grossly negligent response to a substantial risk of serious harm. *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001). Moreover, prison officials are not liable for failure to protect if (1) "they were unaware of even an obvious risk to inmate health or safety;" (2) "they did not know of the underlying facts indicating a sufficiently substantial danger;" (3) "they knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was

insubstantial or nonexistent;" (4) "they knew of a substantial risk to inmate health or safety

. . . [and] responded reasonably to the danger, even if the harm was not ultimately averted."

*Farmer*, 511 U.S. at 844–45.

Plaintiff contends that, on the day of the incident, defendants Gustafson, Kolek, and

White ordered plaintiff and other inmates to work in a field with standing water. He states

that, during transport of the prisoners to the work site in caravan-like tractor trailer vehicles,

his vehicle started sliding in the mud while headed down a hill. The vehicle could not be

brought under control, and White instructed the prisoners to jump out of the vehicle.

Plaintiff states that he was injured as a result of jumping from the vehicle. In plaintiff's

after-the-fact opinion, it was "obvious" the vehicles transporting the prisoners would not be

able to navigate the rain-soaked terrain.

The defendants submitted an accident investigation narrative of the incident as it

applied to plaintiff:

> On 01/13/2017 at approximately 0745 hours offender Glowski, Aaron
> #2028955 was working with the field force headed down Snake Hill Road to
> work, when the trailers began to jack-knife. Said offender, along with several
> others, jumped from the trailers. He was taken to medical where he was
> complaining of pain in his back and left knee. He was given Tylenol for pain
> and [a] 3-day cell pass.

(Docket Entry No. 99-1, p. 7.) White reported that plaintiff was on the trailer when it

skidded in mud and hit the trailer in front of it. *Id.*, p. 4. Thus, the report indicates that the

vehicles transporting plaintiff jack-knifed while proceeding down a hill, skidded in mud, and

hit another trailer. Whether there was "standing water" on the ground is not a material fact,

as the report establishes, and plaintiff agrees, that the vehicle skidded in mud.  Plaintiff does not argue, much less show, that standing water posed a greater risk of serious injury than did mud for purposes of deliberate indifference in this instance.

Plaintiff's argument falls short of meeting the demanding standards for deliberate indifference.  A prison official knows of an excessive risk only if he is aware of facts from which he could infer that a substantial risk of serious harm exists and he in fact draws the inference.  *Farmer*, 511 U.S. at 837; *Adames*, 331 F.3d at 512.  Plaintiff presents no probative summary judgment evidence that the defendants knew of, and deliberately ignored, an excessive risk to plaintiff's safety by having him work in the field and in transporting him to the field in a tractor trailer following a rainy day.  Indeed, in her "Supervisor's Investigation of Employee/Offender Injury" report, White found there were "no unsafe conditions" and "no unsafe act."  (Docket Entry No. 99-1, p. 4.)  Plaintiff's disagreement with White's findings is not probative summary judgment evidence supporting his claim that the defendants were aware of, and disregarded, an excessive risk of serious harm.

Plaintiff additionally claims that White was deliberately indifferent to his safety by telling the inmates to jump from the skidding, jack-knifed trailer.[1]  Even assuming plaintiff

---

[1]The defendants inconsistently argue that White did – and did not – instruct the prisoners to jump.  While the defendants argue that existence of the instruction is an immaterial factual dispute, they also argue that, "In fact, [White] observed the serious risk of harm caused by a jack-knifing tractor-trailer that was sliding down a hill constituted [*sic*] and instructed Glowski to jump in the hope that the injuries could be averted."  (Docket Entry No. 99, pp. 9–10.)  This argument appears to concede that White gave the instruction.  However, no probative summary judgment evidence supports the postulation as to her subjective reason for giving the instruction, nor can such subjective reason be inferred from the undisputed facts.

jumped from the trailer solely in response to White's instruction, no deliberate indifference is shown.   Plaintiff must present probable summary judgment evidence that White subjectively knew that instructing plaintiff to jump from the trailer posed an excessive risk of serious injury to him and that she deliberately ignored the risk. *Adames*, 331 F.3d at 512. Plaintiff's unsupported allegation that White was aware of the "obvious" risk and chose to ignore it forms the basis of his claim, but it does not constitute probable summary judgment evidence of deliberate indifference.

In his response to the motion for summary judgment, plaintiff argues that White's investigation report suggests that there were unsafe conditions and acts, in that the trailer skidded in the mud and hit another trailer.  He also argues that this suggests there is "more discoverable evidence and an accident report."  (Docket Entry No. 109, p. 2.)  The exhibit and plaintiff's speculation do not raise a genuine issue of material fact precluding summary judgment.

Plaintiff fails to establish that White was deliberately indifferent to his safety in instructing him to jump from the trailer, and the defendants are entitled to dismissal of this claim.

C.   Deliberate Indifference to Health and Medical Needs

Plaintiff claims that defendants Coleman, Landis, Mayhew, and White were deliberately indifferent to his serious medical needs in failing to conduct adequate

examinations, instructing him to walk following the incident, and refusing to take him to the infirmary.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). A prison official may violate the Eighth Amendment's prohibition against cruel and unusual punishment if he acts with deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Deliberate indifference exists where a prison official knows of an excessive risk to inmate health or safety and deliberately disregards that risk. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The facts underlying a claim for deliberate indifference "must clearly evince the medical need in question and the alleged official dereliction." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Unsuccessful medical treatment, negligence or neglect, and medical malpractice do not give rise to a section 1983 cause of action, and an inmate's disagreement with his medical care does not establish a constitutional violation. *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Even if a lapse in professional judgment were to occur, such a failure would amount to mere negligence or malpractice, not a constitutional violation. *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). Deliberate indifference, as it is used in context of the Eighth Amendment, requires more than mere negligence but less than purposeful or knowing infliction of harm; it requires a showing of "subjective recklessness" as used in

12

criminal law. *Farmer*, 511 U.S. at 839–40. A plaintiff must show with sufficient factual allegations, not conclusory assertions, that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238. Medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995).

### i.   *Defendant Coleman*

Plaintiff claims that UTMB physician Coleman was deliberately indifferent to his serious medical needs in that he failed to "deal with plaintiff's medical problems, to inquire into the essential facts to make a professional medical judgment, to conduct adequate examinations or testing that the symptoms called for," and exhibited a "hostile attitude towards plaintiff." (Docket Entry No. 17, p. 16.)

In support of their motion for summary judgment, the defendants submitted an affidavit from James D. Geddes, M.D., who testifies in relevant part as follows:

> My name is James D. Geddes, M.D., DABIM, FRCP(C). I am over the age of 18 years, competent to make this affidavit, and have personal knowledge of the facts herein stated. . . . I am licensed as a medical doctor by the Texas Medical Board. I am currently a Regional Medical Director for the University of Texas Medical Branch Correctional Managed Care ("UTMB/CMC"). I have been with UTMB/CMC since April 2016. Prior to April 2016, I worked in private medical practice in Kingsville, Texas since 1982.
>
> I am making this affidavit in connection with Civil Action No. 4:18-cv-1094, *Aaron Glowski v. James Coleman, et al.*, in the United States District Court for

the Southern District of Texas, Houston Division.   To prepare for this affidavit, I have reviewed: 1) the TDCJ medical records of Plaintiff Aaron Glowski, TDCJ #2028955, 2) Plaintiff's Prisoner's First Amended Civil Rights Complaint, and 3) TDCJ's Risk Management file for the January 13, 2017 accident.   I am familiar with UTMB/CMC and Correctional Managed Health Care ("CMHC") policies and procedures with respect to the provision of medical care.   I am not receiving any pay, save my usual salary, for review of records or preparation of this affidavit.   I have been asked to review the above referred records in order to provide an expert report regarding care provided to Aaron Glowski by Defendant Dr. James Coleman who are [*sic*] employed by the University of Texas Medical Branch at Galveston as a physician.

A copy of my curriculum vitae that outlines my education and experience is attached hereto.

Summary of Complaint

Mr. Glowski claims that on January 13, 2017, he was assigned to the Field Squad 11. Mr. Glowski claims that the transport trailer began to slide downhill and that a TDCJ officer instructed the inmates to jump from the trailer. Glowski claims he was injured when he jumped from the trailer and that Defendant Coleman denied him adequate medical care for his injuries.

Medical Record Findings

Aaron Glowski is a 42-year old male currently incarcerated at TDCJ's Ellis Unit in Huntsville, Texas. He entered TDCJ for his current incarceration on November 10, 2015.

On January 13, 2017, Dr. Coleman evaluated Glowski when he was brought to the clinic with complaints that he hurt his back and left knee when [he] jumped from a trailer that was slipping in the mud.   Glowski denied loss of consciousness or point tenderness,  He did ambulate with a slight limp. Dr. Coleman's evaluation findings were that Glowski was an overweight male in no apparent distress; he was able to do heel/toe walk, sit, stand, and rise from a chair; he was able to climb on the exam table; his straight leg raises were negative; he had no hip pain; his range of motion was normal in all movements; and his knee exam was normal. After Glowski's examination was completed, Dr. Coleman assessed Glowski with acute muscle strain.   Dr.

14

Coleman ordered NSAID for pain and rest for three days. Glowski was instructed to return to the clinic as needed.

On January 20, 2017, Glowski was seen by Nurse Practitioner ("NP") Elege for complaints that he was having lower back pain, left knee pain, left foot tingling, numbness and blurry vision. The record notes the patient refused the assessment stating, "I'm not going to let you do that." Because he refused to complete the assessment, Glowski was asked to leave the clinic. Before leaving the clinic, Glowski also stated that he was already seen by another provider that gave him ibuprofen, but it was not effective. The records notes [*sic*] Glowski was in no apparent distress, alert and oriented, his respirations were even and unlabored, and that the provider was unable to complete the assessment because he was non-compliant.

On January 24, 2017, Glowski was seen by NP Jackson for complaints of left knee pain after standing for a long time, and lower back spasms off and on throughout the day. NP Jackson performed an examination and noted Glowski was in no apparent distress, had no knee laxity, his paraspinal muscles were tender to palpation in the lumbar area, was able to bend without pain, and walk on his toes. Following this examination, NP Jackson assessed the patient with muscle spasms of the lower back, and left knee pain-sprain. As a plan of care, NP Jackson instructed Glowski to stretch and perform strengthening exercises. He was also given a muscle relaxer twice daily for seven days, a steroid injection, ibuprofen 400mg one tablet twice daily for three days, a seven-day sedentary work only work restriction and then to return to work in the fields, and to return to the clinic in 7-10 days if no improvement, or sooner if symptoms worsened.

On February 7, 2017, Dr. Coleman saw Glowski for the second and last time. The record notes Glowski was involved in a trailer rollover accident on January 13, 2017. He had been back to clinic twice and was examined by a mid-level provider ("MLP") once and had refused the other exam. Glowski claimed that he could not walk although he walked to and from clinic, chow and everywhere else. He was fixated on his left medial collateral ligament and stated that he felt a knot, which caused him pain, mainly at night. Glowski indicated his knee locks up on him when he sleeps, it does not happen during the day, but that he hurts too bad to work in the fields. He has also had a very recent job change. After Dr. Coleman's exam, Glowski asked if he could have a second opinion. Mr. Olusanya, NP examined him as well and it was also his conclusion that it was a normal knee exam. The examination findings showed

Glowski's left knee had full range of motion, no crepitus, no effusion, no asymmetry, no point tenderness, and ACL, PCL, MCL, LCL (tendons in the knee) were intact. Lachman and McMurry tests were also normal. Knee, right – normal exam as well. Dr. Coleman assessed the patient with subjective knee pain vs. malingering. Glowski voiced that he could not walk, which was not true since he walked to the clinic. Glowski was dismissed from the clinic and Dr. Coleman noted there was no medical indication for restrictions.

On February 21, 2017, Glowski was seen by NP Jackson for complaints of sharp pain on right buttock and down back of right leg. NP Jackson noted that it was difficult to assess the patient's knee and back because he was uncooperative due to exaggerating pain. NP Jackson assessed Glowski with lumbar strain, left knee pain, and questionable malingering. The plan of care was Motrin, as well as X-rays of Glowski's lumbar, right hip, and left knee. NP Jackson also issued Glowski a cell pass for seven days and instructed Glowski to follow up in one week.

Glowski had X-rays taken on February 22, 2017, and NP Jackson referred Glowski to the Hospital Galveston Orthopedic Knee clinic for evaluation. NP Jackson noted the X-rays revealed an old MCL injury of the left knee and possible nondisplaced acetabular fracture of the right hip. Subsequent X-rays of the right hip done on April 17, 2018, demonstrated no fracture or dislocation present.

On February 27, 2017, Glowski was seen in the Hospital Galveston Orthopedic Surgery clinic for complaints of back pain. The record noted Glowski slipped on mud when he jumped off the trailer. Since then, Glowski has had back pain. About an hour after the fall, he started to feel some numbness in his left leg, and now he has numbness going down his right leg as well. Glowski denied any urinary and bowel incontinence, but he did mention that he feels week [sic] due to pain. Glowski denies any previous injury or surgery to his back, and did not complain of upper extremity symptoms. Of note[,] he also had knee pain at the time of injury, but states this has been improving. Sometimes his left knee pain [sic] "locks up" when sleeping, but his main complaint was his back pain. An examination of Glowski's back and left knee was performed and X-rays of the lumbar spine and left knee were reviewed. The assessment [was] back pain for 5–6 weeks, acute onset with possible radiculopathy. The plan of care was weight bearing bilaterally; pain control with NSAID, Tylenol #3, meloxicam for back spasm pain, and Gabapentin for neuropathic pain; referral to Ortho Spine, X-rays of thoracic and lumbar spine.

16

Glowski was instructed to schedule earlier appointments if symptoms worsen, such as urinary or bowel symptoms or new injury. He was also instructed to follow up with general ortho if the knee fail[ed] to improve completely and he should refrain from heavy lifting until follow up with Ortho [S]pine.

On March 6, 2017, Glowski was evaluated in the Hospital Galveston Orthopedic clinic for his complaints of right hip pain. Glowski was examined and his right hip X-rays revealed no fracture or dislocation. The assessment was lower back pain with radiculopathy. The plan of care was referral to Ortho Spine clinic, cuff pass, a bottom row and bottom bunk restriction, medical shower, medically unassigned and to follow up as needed.

On March 10, 2017, Diane Jackson evaluated Glowski for a follow up. The record notes Glowski had mood and anger problems that interfered with his behaving in a positive manner and that he was very negative about his life in TDCJ. He denied suicidal or homicidal ideations, but he was angry that he would spend the rest of his life in prison, and that he thought everyone was "screwing him over" because "of the grievances." NP Jackson noted the patient was in no apparent distress, he was standing for comfort, walked with a limp, did not want to assess straight leg raises and [had] no paraspinal tenderness with palpation. NP Jackson's assessment was chronic lumbar pain and improving knee pain. The plan of care was to medically unassign for 99 days, Tylenol 3, and a Hospital Galveston appointment with Ortho-spine [*sic*] for an MRI. These may be discontinued after his Ortho-spine [*sic*] app[ointment] depending on outcome/findings. Dr. Coleman ordered the Tylenol 3 one tablet twice daily for 21 days. Dr. Coleman had no further encounters with Glowski.

(Docket Entry No, 101-1, pp. 2–7.) Geddes notes that the results on nerve conduction studies performed in early 2019 were normal, and that MRIs of plaintiff's lumbar spinal region undertaken in May 2017 and September 2018 were unremarkable and revealed no significant degenerative changes and no significant stenosis or narrowing. Chart notes from the Ortho clinic in March 2019 found no need for surgical intervention and no evidence of neurological compromise. Plaintiff declined a back brace as he did not want to leave his current unit. *Id.*,

17

p. 7. Geddes states that "no radiologic evidence to explain this patient's symptoms was ever found." *Id.*

The above affidavit testimony and a careful review of plaintiff's extensive medical records from 2017 through 2019 (Docket Entry No. 101, Exhibit B, pp. 3–475) refute plaintiff's claim that defendant Coleman was deliberately indifferent to his serious medical needs. Immediately following the incident, Coleman examined plaintiff, diagnosed a sprain, and provided him pain medication and a three-day pass to rest.  Plaintiff's allegation that Coleman should have done additional testing at that time constitutes a disagreement with the medical care he received, and does not establish deliberate indifference.  Whether to provide additional treatment is a classic example of a matter for medical judgment.  *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d 752, 756.  "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).  No exceptional circumstances appear in this instance.  That plaintiff continued complaining of physical issues through 2019 does not constitute probative summary judgment evidence that Coleman was deliberately indifferent to his medical needs in early 2017.

Further, no deliberate indifference is shown by plaintiff's complaint that he had to walk back to his cell after the examination; he presents no probative summary judgment evidence that walking to his cell caused or exacerbated any physical injury.  Although at a

later date plaintiff reported he was unable to walk, medical care providers documented that he had walked to the infirmary and was walking around during the visit.

Coleman again saw plaintiff a short time later on February 7, 2017. He examined plaintiff's knee and assessed "subjective knee pain vs. malingering." *Id*. Plaintiff was dissatisfied with the exam results and demanded a second opinion; mid-level practitioner Olusanya conducted a second exam and agreed with Coleman's assessment. *Id*. Coleman noted in plaintiff's chart that there was no medical indication for restrictions. *Id*., p. 703. Plaintiff's assertions of deliberate indifference as to this second visit fail to meet his burden of proof, as the claim is based solely on his disagreement with Coleman's medical examination, assessments, and plan of care.

Plaintiff proffers no probative summary judgment evidence, and the records do not show, that Coleman refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Plaintiff's conclusory and unsupported allegations of deliberate indifference are insufficient to raise a genuine issue of material fact precluding the granting of summary judgment.

The defendants are entitled to summary judgment as to plaintiff's deliberate indifference claims against Coleman, and the claims are **DISMISSED WITH PREJUDICE**.

ii.    *Defendant Charles Landis*

Plaintiff next states that he sent letters to Assistant Warden Charles Landis on January 28, 2017, and February 25, 2017, asking for help with his medical issues and other problems. Plaintiff complains that Landis was deliberately indifferent to his health and medical needs because Landis never responded to the letters. Plaintiff acknowledges that the letters were not grievances submitted through administrative grievance procedures.

Plaintiff's complaint that Landis failed to respond to his letters is insufficient to establish Landis's personal involvement for purposes of section 1983. *See Cox v. Irby*, 281 F. App'x 390, 391 (5th Cir. 2008) ("[Plaintiff] may have put [the Warden] on notice that his needs for medication and a wheelchair were not being met, but he did not show that the warden was personally involved in his medical care or that there was a causal connection between her conduct and the alleged harm."). Because Landis had no personal connection to the constitutional violations alleged by plaintiff, he cannot be held liable under section 1983. *See Oliver v. Scott*, 276 F.3d 736, 742 & n.6 (5th Cir. 2002) (holding that section 1983 does not create supervisory or respondeat superior liability); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). A prisoner cannot force section 1983 liability on prison officials and employees by the simple expediency of sending them an unsolicited complaint letter that goes unanswered. Moreover, the medical records show that plaintiff was seen and evaluated by medical care staff following his sending of the letters, and he presents no probative summary

judgment evidence that Landis actually ignored the letters. To the extent plaintiff's claim is premised on the fact that Landis did not personally reply to his letters, plaintiff enjoyed no constitutional right to receive a reply to the letters.

Plaintiff proffers no probative summary judgment evidence that Landis had any personal involvement in plaintiff's medical care, or that Landis was deliberately indifferent to his health, safety, or serious medical needs. Plaintiff's conclusory and unsupported allegations of deliberate indifference are insufficient to raise a genuine issue of material fact precluding the granting of summary judgment.

The defendants are entitled to summary judgment as to plaintiff's deliberate indifference claims against Landis, and the claims are **DISMISSED WITH PREJUDICE**.

### iii.    *Defendant Christine White*

Plaintiff complains that defendant White told him to walk to the infirmary or gymnasium following the incident on January 13, 2017. He argues that White was deliberately indifferent to his serious medical needs in making him walk instead of having him carried by stretcher, as he had been injured in the incident. However, plaintiff walked to the on-site examination area, was examined and evaluated by Coleman shortly after the incident, and found "able to heel/toe walk, stand and rise from chair. Able to climb on exam table . . . ROM normal in all movements." Coleman diagnosed an acute muscle strain and gave plaintiff anti-inflammatory pain medication with a three day pass for rest. (Docket Entry No. 101, Exhibit B, pp. 709–10.) Coleman ended the encounter and plaintiff returned

to his cell on foot.  Because medical staff examined plaintiff, provided on-site treatment and cleared him for return to his cell, plaintiff proffers no probative summary judgment evidence demonstrating that White knew of and disregarded an excessive risk to plaintiff's health or safety by ordering him to walk following the incident.

Plaintiff further claims that White was deliberately indifferent to his serious medical needs on February 10, 2017, when she refused to take him to the infirmary following his refusal to turn out for work.  According to plaintiff, he was medically restricted from work on that date due to his incident-related injuries.  However, the medical records reflect that plaintiff had been seen by Coleman three days earlier on February 7, 2017, and that Coleman determined there were no medical indications for a work restriction.  (Docket Entry No. 101, Exhibit B, pp. 702–03.)  Plaintiff's assertion that he was restricted from working or otherwise not capable of working on February 10, 2017, is refuted by his medical records.

Although plaintiff directs the Court's attention to a note appearing in his medical records as proof that he was medically restricted from working on February 10, 2017, the note does not support his claim.  The note, dated *March 31, 2017*, and signed by NP Jackson, stated that plaintiff "was no [*sic*] able to work on the 10the [*sic*] 16th [*sic*] of FEB as he was under the care of medical.  He is still medically unassigned at this time." (Docket Entry No. 101, p. 21.)  It is unclear what Jackson meant by "the 10the 16th of FEB," and the medical records provide no clarification.  Regardless, the note was added to plaintiff's medical records on March 31, 2017, well after the events of February 10, 2017.  Moreover, the

medical records show that NP Jackson issued plaintiff a seven-day sedentary work medical pass on January 24, 2017, which expired well before February 10, 2017. *Id.*, p. 210. Plaintiff presents no probative summary judgment evidence that White knew on February 10, 2017, that plaintiff was unable to work or was medically restricted from working.

Moreover, to any extent plaintiff requested White to take him to the infirmary on February 10, 2017, in order to verify that he was restricted from working, he was seeking information, not medical care or treatment. No deliberate indifference is shown.

Plaintiff proffers no probative summary judgment evidence, and the records do not show, that White knew of an excessive risk to plaintiff's health or safety and deliberately disregarded that risk by ordering him to turn out for work on February 10, 2017, or in not taking him to the clinic that day. Plaintiff's conclusory allegations of deliberate indifference are unsupported in the record and insufficient to raise a genuine issue of material fact precluding the granting of summary judgment.

The defendants are entitled to summary judgment dismissal of plaintiff's deliberate indifference claims against White, and the claims are **DISMISSED WITH PREJUDICE**.

*iv.     Defendant Jason Mayhew*

Plaintiff claims that defendant Mayhew accompanied White on February 10, 2017, when he was ordered to turn out for work. The claims he raises against Mayhew are the same as those he raised against White, and the claims fail for the same reasons.

Plaintiff proffers no probative summary judgment evidence, and the records do not show, that Mayhew knew of an excessive risk to plaintiff's health or safety and deliberately disregarded that risk by ordering him to turn out for work on February 10, 2017, or in not taking him to the clinic that day. Plaintiff's conclusory allegations of deliberate indifference are unsupported in the record and insufficient to raise a genuine issue of material fact precluding the granting of summary judgment.

The defendants are entitled to summary judgment dismissal of plaintiff's deliberate indifference claims against Mayhew, and the claims are **DISMISSED WITH PREJUDICE**.

D.    Retaliation

Plaintiff argues that defendants Gustafson, Kolek, Mayhew, and White unlawfully retaliated against him.

To prevail on a claim of retaliation, a prisoner must establish: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for exercising that right, (3) a retaliatory or adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Conclusory allegations of retaliation are insufficient to support a claim of retaliation. *Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999). The prisoner must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred. *Id*. That is, the showing must be more than the prisoner's personal belief that he was the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). To show causation,

24

the prisoner must establish that, but for the retaliatory motive, the incident would not have occurred. *McDonald*, 132 F.3d at 231.   Claims of retaliation must be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions.  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Plaintiff contends that defendants Gustafson, Kolek, Mayhew, and White retaliated against him in the following instances.

### i.    *Safety training sheets*

Plaintiff contends that Kolek and White threatened him on three occasions with disciplinary charges for his refusal to sign safety training sheets.  He states that he signed the safety training sheet on two of the occasions but refused the third demand.

Although plaintiff complains that the defendants threatened him with disciplinary charges for refusing to sign the safety training sheets, they did not charge him with a disciplinary infraction for refusing to sign the sheet. Moreover, the signing of administrative safety sheets did not involve a constitutional issue, as plaintiff enjoyed no constitutionally-protected right to refuse to sign the sheets.  Thus, plaintiff fails to establish the required elements of a constitutional right and resulting adverse or retaliatory act, and no retaliation is established.  The defendants are entitled to summary judgment dismissal of this claim.

### ii.    *False disciplinary charges for refusing to work*

Plaintiff next claims that Gustafson, Kolek, Mayhew, and White wrote false disciplinary charges against him for refusing to work on February 10, 2017, and ultimately

found him guilty solely in retaliation for his filing grievances for unsafe working conditions. Plaintiff asks the Court to set the disciplinary conviction aside.

As a preliminary matter, the Court notes that plaintiff cannot seek to set aside a prison disciplinary conviction through a section 1983 lawsuit; the constitutionality of a disciplinary conviction must be challenged through a habeas corpus proceeding. *See Edwards v. Balisok*, 520 U.S. 641, 646–47 (1997). Nor will the Court adjudicate in this lawsuit plaintiff's claim that the charges were false. A retaliatory disciplinary conviction need not be false, and an error-free disciplinary conviction can support a claim for retaliation. *See Woods*, 60 F.3d at 1165 (holding that an act "motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate").

Even so, the Court notes that challenges to disciplinary proceedings generally do not raise a cognizable constitutional violation unless the prisoner lost good time credits and is eligible for mandatory supervision. *See Malchi v. Thaler*, 211 F.3d 953, 957–58 (5th Cir. 2000); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997). Plaintiff is serving four enhanced life sentences for aggravated assault of a public servant with use of a deadly weapon, and is not eligible for mandatory supervision. *See* TEX. GOV'T CODE § 508.149(a)(7). Moreover, the disciplinary conviction records show that plaintiff was sanctioned with loss of recreation and commissary privileges, with no forfeiture of accrued good time credit. (Docket Entry No. 99-2, p. 7.) Consequently, plaintiff cannot raise a due

process challenge to his disciplinary conviction, and his challenge to the validity of the conviction would raise no issue of a constitutional dimension.

Regardless, plaintiff presents no probative summary judgment evidence establishing that, but for a retaliatory motive, he would not have been charged with and found guilty of the disciplinary infraction. In this instance, the probative summary judgment evidence shows that plaintiff filed one grievance complaining of unsafe working conditions – grievance number 2017076325, filed on January 14, 2017, a day after the incident. (Docket Entry No. 99, Exhibit E, pp. 438–39.) Plaintiff refused to turn out for work nearly one month later on February 10, 2017, and a disciplinary charge was lodged against him for "fail[ure] to turn out for his work assignment without a legitimate reason." *Id.*, Exhibit D, pp. 474–482. Plaintiff disputed the charge and said he was unable to work because his knee was hurting. *Id.*

As shown by plaintiff's medical records, Coleman did not release plaintiff from work duty following the incident on January 13, 2017. Coleman further noted that plaintiff did not have and did not warrant medical restrictions as of February 7, 2017. *Id.*, Exhibit B, p. 703; Exhibit C. Although plaintiff asserts that Coleman's medical assessments of plaintiff were inadequate, his disagreement with Coleman's professional judgment does not raise a genuine issue of material fact as to the retaliation claim. The probative summary judgment evidence shows that the defendants relied on Coleman's assessment and plaintiff's lack of work restrictions as of February 10, 2017.

Plaintiff's conclusory assertions of retaliatory intent and causation are unsupported in the record and are insufficient to preclude the granting of summary judgment in favor of the defendants.  No actionable retaliation is shown, and the defendants are entitled to summary judgment dismissal of this section 1983 claim.

   iii. *Failure to transport to infirmary*

Plaintiff additionally asserts that White retaliated against him for filing work-related grievances by refusing to take him to the infirmary on February 10, 2017.

As noted above, plaintiff filed one grievance complaining of unsafe working conditions on January 14, 2017, a day after the incident.  Plaintiff refused to turn out for work nearly one month later on February 10, 2017, complaining that his knee hurt.  He contends he told White that he needed to be examined by medical staff, but that White responded she had no independent authority to take him to be seen by medical staff.  As noted earlier, plaintiff's medical records as of February 10, 2017, revealed no medical restrictions preventing him from working on that date, and he had been cleared for work three days earlier.  (Docket Entries No. 17, p. 11; No. 99, Exhibit B, p. 703, Exhibit C.)

Plaintiff submits no probative summary judgment evidence establishing that, but for a retaliatory motive, White would have taken him to the medical clinic on February 10, 2017.  His conclusory assertions of retaliatory intent and causation are insufficient to preclude the granting of summary judgment in favor of the defendants.  No genuine issue of material fact

precluding summary judgment is shown, and the defendants are entitled to summary judgment dismissal of the claim.

For these reasons, the defendants' motion for summary judgment is **GRANTED**, and plaintiff's retaliation claims against Gustafson, Kolek, Mayhew, and White are **DISMISSED WITH PREJUDICE**.

E.    Qualified Immunity

The defendants argue that, as state officials, they are entitled to qualified immunity. Government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly-established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a government official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar recovery. *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). The United States Court of Appeals for the Fifth Circuit has emphasized that a government official is entitled to qualified immunity unless all reasonable officials would have realized that the challenged conduct was proscribed by law at the time the official acted and under the circumstances the official acted. *Dudley v. Angel*, 209 F.3d 460, 462 (5th Cir. 2000).

The Supreme Court of the United States has laid out a two-part test to determine whether a defendant is entitled to qualified immunity: the courts must determine, first, whether the facts alleged by the plaintiff make out a violation of a constitutional right, and

second, whether the defendant's actions violated clearly established rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

The Court has determined that plaintiff has not met his burden of proof as to any claims raised in this lawsuit for violation of his constitutional rights. Accordingly, the defendants are entitled to qualified immunity.

F.    Defendant Vivian Elege

Plaintiff claims that defendant Elege, a nurse practitioner, was deliberately indifferent to his serious medical needs on January 20, 2017, when she refused to examine and treat him for the injuries he sustained in the incident. He seeks monetary damages against her in her individual capacity.

The Office of the Attorney General for the State of Texas ("OAG") initially filed an answer to this lawsuit on behalf of the defendants, including defendant Elege. (Docket Entry No. 26.) However, the OAG later notified the Court that it did not have authority to represent Elege in the lawsuit, as Elege had not authorized the OAG to file an answer on her behalf or to waive formal service of process. Further review showed that on January 20, 2017—the date giving rise to plaintiff's claims against Elege—she was not an employee of UTMB but rather was employed by an independent contractor, Lone Star MedStaff. As a result, the OAG was not authorized to represent Elege in this lawsuit, and the Court granted the OAG's motion to withdraw from representation of Elege, effective as of the OAG's

initial appearance in the lawsuit. The Court ordered the OAG to notify Elege of the lawsuit, but Elege has taken no action of record.

To state a cause of action under section 1983, a plaintiff must allege that some person has deprived him of a federal statutory or constitutional right, and that the person acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020). The Court ordered plaintiff to file a more definite statement of his claims against Elege, including factual allegations supporting his claim that Elege was a state actor at the time of the incident. Plaintiff complied. (Docket Entry No. 121.) Plaintiff responded that Elege refused to examine him when he was unable to follow her instructions due to pain, and that she terminated the visit without treatment. Plaintiff's response provides no factual allegations supporting his claim that Elege was a state actor on January 20, 2017.

Even assuming Elege had been a state actor at the time she attempted to examine plaintiff, plaintiff's own factual allegations against her raise no viable claim for deliberate indifference. To the contrary, plaintiff states that he was unable to cooperate with certain portions of the examination, and that he refused to cooperate with other aspects of the examination, such as straight leg raises. Plaintiff acknowledges that he was seen by another provider a few days later, at which time he was able to cooperate with the examination and received treatment. To the extent plaintiff claims that Elege's actions caused a delay in his treatment, he pleads no factual allegations showing that his physical injuries were exacerbated by the delay or that the delay caused him substantial harm.

31

Moreover, the medical record for the encounter indicates that, "Offender refused assessment and [was] non-compliant and argumentative stating 'I'm not going to let you do that.' He was asked to leave clinic." Elege noted that she was unable to complete the assessment because offender was non-compliant, and that he could resubmit a sick call request to return at a later date. (Docket Entry No. 101, Exhibit B, pp. 212–13.) The records do not indicate that Elege "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson*, 759 F.2d at 1238.

Because plaintiff fails to plead factual allegations supporting his claim that Elege was a state actor for purposes of liability under section 1983. Even assuming she were a state actor at the time, plaintiff's factual allegations do not demonstrate that she was deliberately indifferent to his serious medical needs. Plaintiff's section 1983 claims against Elege are **DISMISSED WITHOUT PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e)(2)(B) for failure to state a viable claim for relief.

## IV.  CONCLUSION

Plaintiff's claims against defendant Vivian Elege are **DISMISSED WITHOUT PREJUDICE** for failure to state a viable claim for relief against her under section 1983.

Defendants White, Landis, Gustafson, Kolek, Mayhew, and Coleman's motion for summary judgment (Docket Entry No. 99) is **GRANTED**. Plaintiff's claims that are barred

by Eleventh Amendment immunity are **DISMISSED WITHOUT PREJUDICE**. Plaintiff's

remaining claims are **DISMISSED WITH PREJUDICE**.

Any and all pending motions are **DISMISSED AS MOOT**.

Signed at Houston, Texas, on this the 31st day of March, 2023.


KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE